**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>CLAYTON EVAN CUMMINGS,<br><br>                         Petitioner. | No. 85413-5-I<br>(consolidated with No. 85786-0-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — In this personal restraint petition (PRP), Clayton Cummings seeks relief from restraint following his guilty plea of three counts of child molestation, three counts of rape in the third degree, and one count of assault in the second degree domestic violence.  Because Cummings does not establish grounds for relief, we deny Cummings's PRP.

I

Between March 6, 2019, and March 27, 2019, Cummings was charged with the following crimes: three counts of child molestation in the first degree for acts committed against N.L. in 2006; three counts of child molestation in the first degree for acts he committed against S.T.-K. between 2002 and 2007; two counts of rape in the third degree for acts committed against S.W. in 2018; three counts of rape in the third degree and one count of assault in the second degree domestic violence for acts he committed against J.O. in 2018; two counts of rape in the third degree domestic violence against

S.W.; two counts of child molestation in the first degree for acts he committed against T.E.A. from October 2000 to October 2003; and rape in the third degree for acts committed against C.M.H. in 2018.

Cummings was initially scheduled for separate trials on the charges. Trial concerning the acts against J.O. and S.W. began on May 16, 2022. Testimony began on May 17, with J.O. testifying to the incidents that took place between she and Cummings. Before testimony resumed the next day, the parties informed the court that a plea had been worked out. All pending charges were combined in a single amended information. Cummings then pleaded guilty to three counts of child molestation, three counts of rape in the third degree, and one count of assault in the second degree domestic violence. Cummings was sentenced to 149 months for each count of child molestation, 60 months for each count of rape, and 63 months for assault in the second degree, all run concurrently.

In May 2023, Cummings filed this timely PRP and a second PRP in August 2023, which this court consolidated. Cummings is currently in custody at Coyote Ridge Correction Center in Connell, Washington.

II

Collateral relief from a conviction through a PRP is an extraordinary remedy and petitioners must meet a high standard to obtain relief. In re Pers. Restraint of Kennedy, 200 Wn.2d 1,12, 513 P.3d 769 (2022). A petitioner may request relief through a PRP when they are under an unlawful restraint. RAP 16.4(a)-(c). "A personal restraint petitioner must prove either a (1) a constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect

which inherently results in a complete miscarriage of justice.'" In re Pers. Restraint of Monschke, 160 Wn. App. 479, 488, 251 P.3d 884 (2010) (quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)).  The petitioner must support the petition with facts or evidence and may not rely solely on conclusory allegations. Monschke, 160 Wn. App. at 488; RAP 16.7(a)(2)(i).  The petitioner has the burden to prove prejudice by a preponderance of the evidence.  In re Pers. Restraint of Lord, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

In evaluating PRPs, we can (1) dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error; (2) remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record; or (3) grant the petition without further hearing if the petitioner has proven actual prejudice or a miscarriage of justice.  In re Pers. Restraint of Stockwell, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

A

Cummings first argues, both through his pro se petition and his appointed counsel's supplemental brief, that RCW 9A.44.020(1) is unconstitutional because it violates equal protection, the privileges and immunities clause, separation of powers, and violates the bill of attainder.  Because Cummings cannot demonstrate actual and substantial prejudice, we do not reach his constitutional argument.

RCW 9A.44.020(1) provides, "[i]n order to convict a person of any [sex offense] defined in this chapter[,] it shall not be necessary that the testimony of the alleged victim is corroborated."  Typically, if a case goes to a jury trial, the jury is given an instruction based on RCW 9A.44.020(1).  See, e.g., State v. Kovalenko, 30 Wn. App. 2d 729, 746,

546 P.3d 514, review denied, 559 P.3d 1025 (2024); State v. Rohleder, 31 Wn. App. 2d 492, 499, 550 P.3d 1042 (2024), review denied, 559 P.3d 492 (2024); State v. Chenoweth, 188 Wn. App. 521, 535 354 P.3d 13 (2015); State v. Zimmerman, 130 Wn. App. 170, 182-83, 121 P.3d 1216 (2005).

But because Cummings pleaded guilty and his case did not go to a jury, the jury was never given an instruction based on RCW 9A.44.020(1).  Indeed, there is nothing in the record that demonstrates the statute played any role in Cummings's case or his decision to plead guilty.  Thus, even if RCW 9A.44.020(1) is unconstitutional, Cummings cannot show actual and substantial prejudice.  Accordingly, we decline to reach the merits of his constitutional argument.

B

Cummings argues that his guilty plea was involuntary.  We disagree.

Due process requires that a defendant enter a guilty plea knowingly, intelligently, and voluntarily.  State v. Weyrich, 163 Wn.2d 554, 556-57, 182 P.3d 965 (2008).  Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances.  State v. Branch, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996).  An involuntary plea constitutes a manifest injustice.  State v. Walsh, 143 Wn.2d 1, 6, 17 P.3d 591 (2001).

Cummings asserts that he was threatened and coerced into taking the plea.  He argues that RCW 9A.44.020(1) was used to intimidate and force him to plead guilty.  But there is nothing in the record that indicates Cummings's plea was involuntary.  First, Cummings signed his plea indicating that he made the plea freely and voluntarily and that no one threatened or coerced him.  State v. Smith, 134 Wn.2d 849, 852, 953 P.2d

810 (1998) ("When a defendant completes a plea statement and admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary."). Because Cummings signed the plea agreement acknowledging that there was no coercion, we presume that the plea was voluntary,

Second, during the hearing, Cummings informed the judge that he had reviewed the statements with his attorney, signed the document, understood the rights he was sacrificing, acknowledged the maximum penalties and confirmed no one threatened him. The trial judge also signed a statement that he found Cummings's plea to be knowing, voluntary, and intelligent.

Lastly, Cummings does not present sufficient evidence or argument that he was coerced into taking the plea. As discussed above, RCW 9A.44.020(1) did not play a role in the trial, and the mere possibility that it may have been given as an instruction is insufficient. Cummings did not ask the trial judge any questions during the plea hearing or indicate the statute was the reason he pleaded guilty.

For those reasons, based on the totality of circumstances, we conclude that Cummings's plea was voluntary and he has not demonstrated that the trial court erred.

C

Cummings next argues that he is entitled to relief from his conviction because his counsel was ineffective in violation of the Sixth Amendment. A defendant has a constitutional right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A claim of ineffective assistance of counsel presents a mixed question of fact and law that we review de novo. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). To

prevail on a claim of ineffective assistance of counsel, a party must establish that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant's case. Strickland, 466 U.S. at 687. If a defendant fails to satisfy either prong, we need not inquire further. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

To establish deficient performance, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). To demonstrate prejudice, the defendant must show that, absent counsel's unprofessional errors, the result of the proceeding would have been different. McNeal, 145 Wn.2d at 362. When reviewing an ineffective assistance of counsel claim, there is a strong presumption that counsel's representation was "adequate, and exceptional deference must be given when evaluating counsel's strategic decisions." McNeal, 145 Wn.2d at 362.

Cummings claims that his trial counsel was ineffective for various actions or inactions during pretrial, trial, and posttrial. We address each of his claims in turn.

1

Cummings first argues that counsel was ineffective because his defense attorney did not move to admit various messages and impeachment evidence. He also argues that his counsel was ineffective for failing to utilize two favorable witnesses, failing to object during voir dire, and failing to argue that RCW 9A.44.020(1) is unconstitutional. Because Cummings pleaded guilty, he cannot establish prejudice under Strickland. For that reason, each of these ineffective of assistance claims fail.

-6-

2

Cummings next argues counsel was ineffective for failing to investigate and address collusion among the victims. We disagree.

Cummings asserts there was substantial collusion among the victims. He also argues that his defense counsel did not conduct an independent investigation from the State's investigation.

Cummings does not adequately explain what the alleged collusion was. He also does not explain what his trial counsel should have done instead. He cannot rely solely on conclusory allegations. Monschke, 160 Wn. App at 488; RAP 16.7(a)(2)(i).

Moreover, it is for the jury to determine, in light of all impeaching evidence available to the defendant, whether a witness has given false testimony under improper influence. State v. Shaffer, 72 Wn.2d 630, 634, 434 P.2d 591 (1967); see also State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010) ("Whether a witness has testified truthfully is entirely for the jury to determine."). Accordingly, whether there was any collusion could have been addressed on cross-examination. But because he pleaded guilty before any cross-examination, his counsel did not have an opportunity.

This claim fails under Strickland.

3

Cummings next argues counsel was ineffective for failing to interview all of the alleged victims. He also argues defense counsel failed to investigate his mental health to present to the court. We disagree.

The first trial surrounded the allegations of two victims, J.O. and S.W. Therefore, defense counsel was not required to interview the other four alleged victims because

their allegations were not a concern of this trial. Cummings cannot show that his defense counsel's performance fell below an objective standard of reasonableness.

Next, Cummings fails to explain what his counsel should have investigated surrounding his mental health. Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."). Cummings also does not explain any resulting prejudice arising from his counsel's alleged deficiency.

Cummings fails to show deficient performance or any resulting prejudice.

4

Cummings argues that counsel was ineffective for not meeting with the elected prosecutor in this case. We disagree.

Cummings's wife and father met with the elected prosecutor, Eric Ritchey, to discuss the case before his sentencing. According to Cummings, Ritchey asked the prosecutors on the case if they were aware of the text messages that surrounded the issue of consent, which the prosecutors confirmed they were aware of. After that meeting, the elected prosecutor did not change the office's decision to prosecute the case.

This claim also fails under Strickland. Cummings does not explain what his counsel could have done that would have changed the circumstances of his case. After the meeting, the State did not change its decision to prosecute the case.

Cummings cannot show deficient performance or resulting prejudice.

D

Cummings next argues that the State failed to fully investigate and overcharged him. Cummings argues the State violated the Brady[1] rule through misconduct, mismanagement, fraud, and bad faith regarding the evidence that supported his innocence. We disagree.

A Brady violation occurs when a prosecutor suppresses "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). To establish a Brady violation, a petitioner "must demonstrate the existence of each of three necessary elements: '[(1)] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued.'" Mullen, 171 Wn.2d at 895 (quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).

Cummings does not explain what evidence the State suppressed in violation of Brady. And, if Cummings is referring to the text messages, then those text messages were in Cummings's own possession and the State also confirmed they were aware of the messages. Cummings cannot meet the necessary elements for a Brady violation.

We decline to grant relief on this ground.

---

[1] Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

E

Cummings argues that the Department of Corrections (DOC) failed to provide him access to a Zoom hearing on April 18, 2023. We disagree.

The hearing surrounded Cummings's motion to compel redacted discovery. DOC asserts that it never received a request for Cummings to appear virtually. On April 18, 2023, the hearing took place with Cummings's defense attorney present along with the prosecutor. The State agreed to send the redacted discovery and the trial court struck the hearing. Cummings's attorney then sent the redacted discovery to Cummings on June 22, 2023.

The issue asserted by Cummings appears to be resolved. There is no further relief that this court could grant.

Cummings has not met his burden to demonstrate error or actual and substantial prejudice. We deny Cummings's PRP.[2]

_____
Mann, J.

WE CONCUR:

_____         _____
Chung, J.                                                Coburn, J.

_____

[2] Cummings had filed multiple pro se motions before this court. These include: (1) June 12, 2024 motion to direct his appointed counsel to represent his position; (2) June 28, 2024 motion to discharge his appointed counsel; (3) On October 3, 2024 motion for an evidentiary hearing to determine whether RCW 9A.44.020 is unconstitutional; (4) October 7, 2024 motion to stay his petition; (5) October 10, 2024 motion to discharge his counsel and appoint new counsel; (6) October 21, 2024 motion to compel his attorney to send documents to him; (7) October 24, 2024 motion to disqualify counsel and direct the State to file new pleadings; (8) December 3, 2024 motion objecting to the assigned panel because an evidentiary hearing is needed; (9) December 5, 2024 motion to remand to superior court; (10) December 10, 2024 motion to discharge his appointed counsel and stay the PRP; and (11) December 16, 2024 motion to remand to superior court. We deny these motions.